IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| NATIONAL EMERGENCY SERVICES, | ) |
| | ) Case No. 4:07CV00013 |
| Appellant, | ) |
| | ) |
| v. | ) **MEMORANDUM OPINION** |
| | ) |
| BUDDY E. WILLIAMS, | ) |
| | ) By: Jackson L. Kiser |
| Appellee. | ) Senior United States District Judge |

Before me is an Appeal from the United States Bankruptcy Court for the Western District of Virginia ("Bankruptcy Court") by Appellant National Emergency Services ("NES"). A hearing was held before this Court on June 12, 2007. For the reasons stated below, I will **AFFIRM** the Judgment of the Bankruptcy Court.

**I.   STATEMENT OF FACTS**

On November 17, 1999, the R.J. Reynolds - Patrick County Memorial Hospital, Inc. ("Reynolds") filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. Reynolds owed the First Bank of Stuart ("First Bank") $1,865,714.28. First Bank was the senior secured lender at that time. Reynolds also owed $426,000 to NES. Both NES and First Bank claimed liens on most of Reynolds's property. The bankruptcy proceedings evolved into an additional case, filed on March 27, 2003, also under chapter 11, which is the parent case to this case on appeal.

Shortly before the initial filing on November 17, 1999, First Bank merged with Branch Banking and Trust Company of Virginia ("BB&T") on July 16, 1999. After roughly one year, the Appellee, Buddy E. Williams, purchased BB&T's claims against Reynolds, and BB&T

1

assigned its rights and interests in Reynolds's property to Williams.  Under the agreement, Williams allowed Reynolds to operate under its board of directors, as opposed to the chapter 11 trustee, and under more lenient credit terms than BB&T allowed.  Williams also intended to advance $265,000 to the hospital to pay legal fees and costs.  To incur this additional debt, Reynolds made a motion under 11 U.S.C. § 364(a).  NES objected to the motion.

Consequently, Williams, Reynolds, NES, and the Official Committee of Unsecured Creditors entered into a Stipulation and Consent Order on January 31, 2001.  Under that order, the parties agreed to allow Williams to advance the $265,000 to Reynolds.  In exchange, the parties agreed that NES was entitled to a claim of approximately $426,000, $160,000 of which would be secured by an interest in certain accounts receivable known as the excluded accounts. Moreover, the order also stated that NES would receive a direct cash payment of $40,000 the day the order became effective.  The Stipulation and Consent Order did not specify whether NES or Williams had a senior interest in the excluded accounts.  Reynolds agreed to collect the excluded accounts for NES and remit one half of the sum collected to NES.  Reynolds also agreed to provide quarterly reports to NES.  NES claims that Reynolds has not remitted any money collected from the excluded accounts to NES or provided NES with the promised reports.

## II.  PROCEDURAL BACKGROUND

NES filed an Adversary Complaint to Subordinate Claim under 11 U.S.C. § 510(c) in the United States Bankruptcy Court for the Western District of Virginia on August 29, 2006.  11 U.S.C. § 510(c) (2004).  On October 13, 2006, Williams filed a motion to dismiss the adversary complaint.  Meanwhile, in the underlying bankruptcy proceedings, the trustee and Reynolds agreed on December 20, 2006, that the underlying case should be dismissed once the instant case

2

concluded.

The Bankruptcy Court granted Williams's motion to dismiss.  The court noted that 11 U.S.C. § 510(c) states that "the court may — under principles of equitable subordination, subordinate *for purposes of distribution* all or part of an allowed claim to all or part of another allowed claim."  11 U.S.C. 510(c) (emphasis added).  As a result, the court concluded that the only purpose of equitable subordination is to realign the priority of claims for distributing assets from the bankruptcy estate.  Because the underlying case will be dismissed upon this case's final resolution, NES could not obtain any relief because there would be no distribution of assets in the underlying case.  Thus, the court dismissed NES's complaint for failing to state a cause of action.

NES appealed the Bankruptcy Court's decision on March 8, 2007.  Williams filed a response brief on April 8, 2007.  I heard oral arguments in this matter on June 12, 2007.  Thus, the matter is ripe for decision.

## III.    LEGAL STANDARD

"Findings of fact by the bankruptcy court in proceedings within its full jurisdiction are reviewable only for clear error and legal questions are subject to *de novo* review."  *Canal Corporation v. Finnman (In Re Johnson)*, 960 F.2d 396, 399 (4th Cir. 1992).  Under Bankruptcy Rule 7012, Federal Rules of Civil Procedure 12(b)-(h) apply to adversary proceedings.  FED. R. BANKR. P. 7012.  Dismissal of a complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure is limited to "the extraordinary case where the pleader makes allegations that show on the face of the complaint some insuperable bar to relief."  *Browning v. Vecellio & Grogan, Inc.*, 945 F. Supp. 930, 931 (W.D.Va. 1996) (internal quotation omitted).  When "considering a

3

motion to dismiss, the court should accept as true all well-pleaded allegations" and construe those allegations in the light most favorable to the plaintiff. *Mylan Labs, Inc. v. Matkar*, 7 F.3d 1130, 1134 (4th Cir. 1993). While the complaint need not provide detailed factual allegations, the basis for relief in the complaint must state "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1965 (2007). Assuming the factual allegations in the complaint are true, they "must be enough to raise a right to relief above the speculative level." *Id*.

## IV.  DISCUSSION

### a.  No Distribution

First, I find that the Bankruptcy Court properly dismissed NES's claim for equitable subordination on the grounds that there would be no distribution in the underlying case. The statute clearly states that the Bankruptcy Court may subordinate a claim "for purposes of distribution." 11 U.S.C. 510(c). Because the parties agreed that there will be no distribution in the parent case, the Bankruptcy Court correctly determined that it could not apply 11 U.S.C. 510(c) to the case before it. As Williams notes, this conclusion is consistent with the result reached by other courts which have considered the issue. *See In re Sendecky*, 315 F.3d 904, 906 (8th Cir. 2003) (finding that a creditor's "claim for equitable subordination must fail because there are no assets in the estate to distribute"); *In re Blumenberg*, 263 B.R. 704, 720 (Bankr. E.D.N.Y. 2001) (finding equitable subordination inapplicable to a case in which the court would distribute no assets); *In re Danbury Square Assocs., Ltd. P'ship*, 153 B.R. 657, 661 (Bankr. S.D.N.Y. 1993) ("If there is going to be no bankruptcy distribution, equitable subordination is meaningless."). Moreover, it appears that a Bankruptcy Court in the Eastern District of Virginia

4

has also reached the same result. *C.F. Trust, Inc. v. DEP, Inc. (In re DEP, Inc.)*, Nos. 95-14438-SSM, 97-1017, 1997 WL 1507390, at *12 (Bankr. E.D.Va. Oct. 31, 1997) ( "[W]here there is no realistic likelihood of excess proceeds for distribution by the trustee, this court does not believe that § 510(c), Bankruptcy Code, may be employed to alter the distribution priorities."). Thus, I believe that the Bankruptcy Court properly dismissed NES's claim because the statute under which NES sought relief is inapplicable to this case.

NES's arguments in response to the Bankruptcy Court's ruling are unpersuasive. First, NES simply asserts that the Bankruptcy Court's holding is "not correct" because it assumes that the dismissal of the underlying parent case would necessitate dismissing this adversary proceeding now on appeal. The Bankruptcy Court made no such finding. Rather, that court stated that the parent case could not be dismissed until the court resolved this case. NES also asserts that "the provisions of 11 U.S.C. § 510(c) of the Bankruptcy Code no more suggest that the only purpose of subordination is to allow the Court to 'realign' claims for the purpose of determining priority status than do the provisions of 11 U.S.C. § 349 mandate the dismissal of adversary proceedings in bankruptcy upon the dismissal of the underlying case itself." As noted above, the Bankruptcy Court did not suggest that any provision of the Bankruptcy Code mandated the dismissal of adversary proceedings upon the dismissal of an underlying case. Next, whether the only purpose of § 510(c) is to allow courts to realign claims for purposes of determining priority status is not the issue in this case. Whether the only purpose of that statute is to allow courts to realign claims for purposes of distribution is. Presumably, NES meant to state that 11 U.S.C. § 510(c) does not only allow courts to realign claims for distribution but also for other purposes. NES has not provided any support in the statute or case law for this

5

proposition. Indeed, all of the authorities before me indicate that the Bankruptcy Court held correctly. Consequently, I will uphold that ruling.

### b. Sufficiency of Pleading

Even if I found that 11 U.S.C. 510(c) applied to this case, I still would find that NES had not alleged sufficient facts on its claim for equitable subordination to survive a motion to dismiss. Both parties have identified the test stated in *Mobile Steel, Co.* as the appropriate standard for most equitable subordination cases. In that case, the United States Court of Appeals for the Fifth Circuit stated that

> three conditions must be satisfied before exercise of the power of equitable subordination is appropriate.
> (i) The claimant must have engaged in some type of inequitable conduct.
> (ii) The misconduct must have resulted in injury to the creditors of the bankrupt or conferred an unfair advantage on the claimant.
> (iii) Equitable subordination of the claim must not be inconsistent with the provisions of the Bankruptcy Act.

*Benjamin v. Diamond (Matter of Mobile Steel Co.)*, 563 F.2d 692, 699–700 (5th Cir. 1977) (citations omitted). This test has become the standard test employed by most courts to evaluate claims for equitable subordination. *United States v. Noland, Trustee*, 517 U.S. 535, 538 (1996). The Fourth Circuit has frequently relied on the factors set forth in *Mobile Steel, Co.* to resolve equitable subordination cases. *See e.g., EEE. Commercial Corp. v. Holmes (In re ASI Reactivation, Inc.)*, 934 F.2d 1315, 1321 (4th Cir. 1991). In this case, NES has conceded that Williams has not behaved inequitably toward any other creditor. Consequently, under *Mobile Steel, Co.*, NES cannot prevail on its claim for equitable subordination.

NES argues that inequitable conduct on the part of the creditor will not always be a prerequisite for equitable subordination. *Noland*, 517 U.S. at 543; *Burden v. United States*, 917

6

F.2d 115, 120 (3d Cir. 1990). In *United States v. Noland, Trustee*, the United States Supreme Court did specifically reserve ruling on the question of "whether a bankruptcy court must always find creditor misconduct before a claim may be equitably subordinated." *Noland*, 517 U.S. at 543. Since that time, most courts to have considered "no fault" equitable subordination claims have only equitable subordinated creditors' claims without a showing of misconduct in a limited set of cases involving tax penalties, stock redemption claims, and punitive damages claims. *SPC Plastics Corp. v. Griffith (In re Structurlite Plastics, Corp.)*, 224 B.R. 27, 35 & n.6 (B.A.P. 6th Cir. 1998); *Matter of Lifschultz Fast Freight*, 132 F.3d 339, 349 (7th Cir. 1997); *Bayer Corp. v. Mascotech, Inc. (In re Autostyle Plastics, Inc.)*, No. 1-98-CV-658, 1999 WL 1005647, at *10 (W.D. Mich. May 25, 1999) "(The cases in which 'no fault subordination' has been applied are limited to cases involving tax penalty claims or stock redemption claims. [Appellant] has not cited, and the Court has not found, any case that has applied 'no fault subordination' to claims such as Appellees' claims, which are simply competing creditor claims." (internal citations omitted)). Obviously, the instant matter is unlike any of those cases factually. Thus, I may only equitably subordinate Williams's claim if I find another exception to the general rule that equitable subordination must be premised on creditor misconduct.

Generally, equitable subordination is an extraordinary remedy to be applied sparingly. *Fabricators, Inc. v. Technical Fabricators, Inc. (Matter of Fabricators, Inc.)*, 926 F.2d 1458, 1464 (5th Cir. 1991). Important policy considerations underlie this general rule.

> Wrongful or unpredictable subordination spawns legal uncertainty of a particular type: the risk that a court may refuse to honor an otherwise binding agreement on amorphous grounds of equity. If a court wrongly subordinates a claim, other investors are sure to take heed. An investor will see that the chance she might not get her money back has gone up slightly. She will be less willing to lend or invest in the future; and the cost of credit will rise for all.

7

*Lifshultz*, 132 F.3d at 347.  I do not believe that NES has shown a sufficient reason to recognize a new class of exceptions to the general rule that equitable subordination requires some type of creditor misconduct.  Most of the types of claims typically subject to no fault equitable subordination are either penalties or punitive damages that do not reflect actual loss from a creditor or stock redemption claims that represent attempts by insiders to shift equity to debt.  In these limited circumstances, the equitable circumstances may strongly support subordination.  NES asks me recognize a much broader exception to the general requirement that equitable subordination requires a showing of creditor misconduct.  NES has simply alleged that Reynolds did not collect on the excluded accounts and that Williams was Reynolds's chief creditor at the time.  Permitting no fault equitable subordination in this case, without further allegations of misconduct, would create an exception to the *Mobile Steel, Co.* test that would swallow the rule.  It would recognize an exception to the requirement of creditor misconduct that would potentially allow equitable subordination in the relatively common circumstance of a debtor failing to meet some obligation owed to a junior creditor.  In addition to being unfair to many blameless senior creditors, such a rule would fling open the doors of equitable subordination, be contrary to the general principle that a court should exercise restraint in applying that doctrine, and lead to enhanced uncertainty in commercial affairs.  Consequently, I do not believe that I should recognize another exception to the *Mobile Steel, Co.* test on the facts of this case.

## V. CONCLUSION

For the reasons stated above, an *Order* will be entered **AFFIRMING** the holding of the Bankruptcy Court in this case.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying

*Order* to the Bankruptcy Court and to all counsel of record.

ENTERED this 19th day of June, 2007.

                                              s/Jackson L. Kiser
                                              Senior United States District Judge